22 F.3d 1106
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 Joseph R. PONDS, Jr., Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 93-5108.
 United States Court of Appeals, Federal Circuit.
 March 29, 1994.
 
 Before MICHEL, CLEVENGER, and RADER, Circuit Judges.
 DECISION
 RADER, Circuit Judge.
 
 
 1
 Joseph R. Ponds, Jr. appeals the United States Court of Federal Claims' denial of his motion for reconsideration. Ponds v. United States, No. 92-121C (Fed.Cl. Feb. 18, 1993). The Court of Federal Claims had granted the Government's motion for summary judgment. Ponds v. United States, No. 92-121C (Fed.Cl. Dec. 29, 1992). Because substantial evidence supports the trial court's judgment, this court affirms.
 
 BACKGROUND
 
 2
 Mr. Ponds, a former Army helicopter pilot, received an appointment to the United States Coast Guard Reserve on July 26, 1976 under a "Direct Commission Aviator" program. He became an active duty officer on April 14, 1979. Mr. Ponds received two unsatisfactory fitness reports, covering the periods June 23, 1979 to January 31, 1980 (first report) and February 1, 1980 to May 27, 1980 (second report).
 
 
 3
 The first report contained written statements criticizing Mr. Ponds' flight performance. It also mentioned Mr. Ponds' decision to switch from aviator status to a staff position, even though this change did not become effective until February 22, 1980, twenty-two days after the end of the reviewing period.
 
 
 4
 On March 24, 1980, Mr. Ponds submitted comments rebutting the first report. Mr. Ponds also alleged discrimination because of insufficient opportunities to remedy his flight performance shortcomings. In turn, Mr. Ponds' reporting officer, R.E. Whitley, Jr., submitted an "endorsement" letter on March 26, 1980, which expressed "shock and dismay" at Mr. Ponds' contentions and elaborated on Mr. Ponds' difficulties in the flight training program.
 
 
 5
 The second report noted a "declining" trend in performance during the reviewing period. The reporting officer stated that "[a]s a result of Lt. Ponds' termination of his aviation career, ... he is being evaluated during this period solely on his staff duties aboard the unit." The report made no mention of Mr. Ponds' February aviation activities. Mr. Ponds signed this report and submitted no statements in rebuttal.
 
 
 6
 On February 6, 1985, Mr. Ponds received notification of his first non-selection to the rank of lieutenant commander. On January 29, 1986, the Coast Guard notified Mr. Ponds of his second non-selection for promotion. Thus, he was scheduled for honorable discharge on June 30, 1986.
 
 
 7
 On June 2, 1986, Mr. Ponds underwent his discharge physical examination. In the medical examination report, examining physician M.W. Williams, M.D., indicated that Mr. Ponds was "not qualified ... to perform all duties of his grade/rate" due to lower back pain and borderline anemia. On June 27, 1986, however, reviewing physician Captain Richard Moore, Jr., M.D., reversed this determination and decided that Mr. Ponds was fit for separation. Dr. Moore's verbal comments were added to Mr. Ponds' Physical Examination Report on August 14, 1986.
 
 
 8
 Despite notification of the consequences of non-selection for promotion, Mr. Ponds professed confusion about his date of separation from the Coast Guard. Mr. Ponds refused to sign his Certificate of Release or Discharge from Active Duty. Mr. Ponds continued to report to his supervisors and obtain medical treatment until an August 13, 1986 altercation with a Coast Guard administrator. The administrator took Mr. Ponds' military I.D. and family privilege cards allegedly with threat of force.
 
 
 9
 On August 14, 1986, Mr. Ponds wrote a letter to the Secretary of Transportation contesting the June 30, 1986, separation date. Mr. Ponds maintained he had not seen the results of his physical examination. He also alleged discrimination in the seizure of his military I.D. and family privilege cards. On November 4, 1986, the Secretary's office rejected Mr. Ponds' challenge.
 
 
 10
 On September 1, 1987, Mr. Ponds joined the Coast Guard Reserve as a lieutenant junior grade. He resigned on April 25, 1988 after non-selection as a lieutenant.
 
 
 11
 The 1979 and 1980 fitness reports form the basis of Mr. Ponds' first application for correction of records with the Department of Transportation's Board for Correction of Military Records (BCMR). On September 11, 1985, Mr. Ponds filed application No. 317-85, which sought to remove the two fitness reports from his military records. Mr. Ponds also applied for redaction of all references to his February 6, 1985, non-selection for promotion, as well as for back pay and allowances from the time of non-selection.
 
 
 12
 Mr. Ponds asserted the first report contained inaccuracies indicating non-familiarity with his work. Additionally, Mr. Ponds argued that Commander Whitley's endorsement letter, sent directly to the Coast Guard Commandant, unfairly criticized Mr. Ponds' aviation performance. Mr. Ponds maintained that he had no chance to rebut this damaging information because he only learned of the letter on August 30, 1984. Lastly, Mr. Ponds alleged the second report wrongly implied his aviation status terminated before the start of his reviewing period.
 
 
 13
 On June 26, 1986, the BCMR learned that Mr. Ponds had filed a discrimination complaint with the Department of Transportation's Civil Rights Office (CRO) on January 23, 1986. After a year-long investigation, the CRO determined Mr. Ponds had not suffered discrimination when he was not selected for promotion in 1985.
 
 
 14
 The BCMR received a copy of the CRO's decision on February 2, 1987. On January 28, 1988, the BCMR issued its decision denying Mr. Ponds' application. The BCMR found consideration of the 1979 and 1980 fitness reports to be time-barred under the three-year limitation of 10 U.S.C. Sec. 1552(b) (Supp. IV 1992). However, given Mr. Ponds' professed ignorance of the existence of the endorsement letter, the BCMR considered the letter "in the interest of justice." The BCMR determined the endorsement letter "simply amplified" comments made in the fitness report. Therefore, the BCMR found no basis on which to remove the endorsement letter. The BCMR concluded that no errors or injustices existed in the record.
 
 
 15
 On March 1, 1989, Mr. Ponds submitted a second application, No. 162-89, to the BCMR. Mr. Ponds alleged his discharge violated Coast Guard regulations because a medical board had not been convened to review the medical finding of "not fit for duty" due to lower back pain. Mr. Ponds sought to return to active duty until he received a "proper and complete medical examination."
 
 
 16
 The Coast Guard submitted an advisory opinion stating Mr. Ponds had been fit for discharge. In one attached affidavit, Mr. Ponds' examining physician stated that his initial finding had not been based on standards contained in the Coast Guard Disability Evaluation System. The physician explained he merely had noted "physical defects which I felt should be corrected before [Mr. Ponds'] separation, if time permitted."
 
 
 17
 On March 6, 1990, Mr. Ponds submitted a rebuttal to the Coast Guard's advisory opinion. Mr. Ponds asserted that "the likely result of a proper medical board would have been a six month retention on active duty" to treat the medical condition. Mr. Ponds emphasized that the combination of this six-month extension, plus his seventeen years, five months, and sixteen days of active duty service, plus the time required to conduct the medical board, would have allowed him to reach eighteen years of service "prior to proper discharge and would have prohibited the [Coast Guard] from denying [the] retirement."
 
 
 18
 In response, the Coast Guard submitted the affidavit of its Chief of Operational Medicine, who opined that Mr. Ponds' lower back pain was a "non-disqualifying" physical defect, and that in such a case a medical board was unnecessary.
 
 
 19
 On October 26, 1990, the BCMR issued its decision denying Mr. Ponds' application. The BCMR determined the Coast Guard committed no errors "with respect to the 1986 medical examination or in discharging [Ponds] after that examination without evaluation by a Medical Board." The BCMR noted Mr. Ponds had not challenged the statement that lower back pain was non-disqualifying. The BCMR also noted that after Mr. Ponds' active duty discharge, he had been sufficiently fit to reenlist in the Coast Guard Reserve the following year.
 
 
 20
 On February 19, 1992, Mr. Ponds filed suit in the United States Court of Federal Claims. Mr. Ponds based his claims on the Tucker Act, 28 U.S.C. Sec. 1491 (1988); the Administrative Procedures Act (APA), 5 U.S.C. Sec. 702 (1988); the Civil Rights Act (CRA), 42 U.S.C. Secs. 1981, 1985 (1988 & Supp. IV 1992); and the due process clause of the fifth amendment. Mr. Ponds sought reinstatement to his previous Coast Guard active duty status along with back pay, allowances, medical expenses incurred by his family since his purported separation date (August 14, 1986), and attorney fees. Alternatively, Mr. Ponds sought money damages for back pay, allowances, medical expenses, and attorney fees.
 
 
 21
 On December 29, 1992, the trial court issued its decision. Ponds, No. 92-121C, slip op. at 8. The Court of Federal Claims held it lacked subject matter jurisdiction to hear claims based on the APA and the CRA. Id. at 5-6. The Court of Federal Claims also held it lacked jurisdiction under the due process clause of the fifth amendment. Id. at 6. The trial court asserted jurisdiction over Mr. Ponds' back pay claim under the Tucker Act, but found requisite support in the record for both BCMR decisions. Id. at 7-8. Therefore, the court granted the Government's motion for summary judgment and dismissed the case. Id. at 9.
 
 DISCUSSION
 
 22
 Correction board decisions bind the Court of Federal Claims absent a showing that they are arbitrary, capricious, contrary to law or unsupported by substantial evidence. Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed.Cir.), cert. denied, 479 U.S. 853 (1986); Heisig v. United States, 719 F.2d 1153, 1156 (Fed.Cir.1983). Further, the trial court's review of BCMR decisions must acknowledge the strong presumption that military officers and administrators discharge their duties correctly, lawfully, and in good faith. Sanders v. United States, 594 F.2d 804, 813 (Ct.Cl.1979) (en banc ). Appellants bear the burden on appeal of proving correction board decisions defective by "cogent and clearly convincing evidence." Sawyer v. United States, 930 F.2d 1577, 1580 (Fed.Cir.1991).
 
 
 23
 This court reviews de novo the propriety of summary judgment decisions. Dodson v. United States Gov't, Dep't of Army, 988 F.2d 1199, 1203 (Fed.Cir.1993). During its review, "an appellate court [must] determine for itself whether the standards for summary judgment [have] been met and is not bound by the trial court's ruling that there was no material factual dispute present in the case." Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed.Cir.1987); Confederated Tribes of Colville Reservation v. United States, 964 F.2d 1102, 1107 (Fed.Cir.1992). This court also reviews jurisdiction, a matter of law, de novo. Dehne v. United States, 970 F.2d 890, 892 (Fed.Cir.1992).
 
 
 24
 Mr. Ponds argues that jurisdiction in this case should depend on the type of relief sought, rather than the theory under which suit is brought. Mr. Ponds maintains that since the Tucker Act provides for suit against the United States based on "the Constitution, or any Act of Congress, or any regulation of an executive department," relief should be available under the APA, the CRA, and the due process clause of the fifth amendment. See 28 U.S.C. Sec. 1491 (1988 & Supp. IV 1992). Mr. Ponds misapprehends the nature of jurisdiction under the Tucker Act.
 
 
 25
 The Tucker Act is a purely jurisdictional statute under which the Federal Government waives sovereign immunity and consents to be sued. United States v. Testan, 424 U.S. 392, 398 (1976). To invoke Tucker Act jurisdiction, an aggrieved party must identify some source of substantive law that mandates payment of money damages by the Federal Government. Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1009 (Ct.Cl.1967). As a waiver of sovereign immunity, jurisdiction under the Tucker Act is strictly construed. United States v. Mitchell, 445 U.S. 535, 538 (1980).
 
 
 26
 The CRA provides no basis for Tucker Act jurisdiction. Jurisdiction under the CRA resides in the district courts, not in the Court of Federal Claims. 42 U.S.C. Sec. 1988(a) (Supp. IV 1992). Because neither the APA nor the Due Process Clause of the Constitution mandate payment of money damages by the Federal Government, the Court of Federal Claims lacks jurisdiction to entertain claims founded solely on these sources. Testan, 424 U.S. at 401-02; Murphy v. United States, 993 F.2d 871, 874 (Fed.Cir.1993). See also Mullenberg v. United States, 857 F.2d 770, 773 (Fed.Cir.1988).
 
 
 27
 The trial court properly asserted jurisdiction over Mr. Ponds' back pay claims, presumably relying on an active duty officer's entitlement to pay in accordance with the officer's rank. 37 U.S.C. Sec. 204(a) (1988). In assessing the merits of the summary judgment motion, this court must determine whether substantial evidence supports BCMR decisions Nos. 317-85 and 162-89. Arens v. United States, 969 F.2d 1034, 1037 (Fed.Cir.1992).
 
 
 28
 Substantial evidence supports BCMR decision No. 317-85. Mr. Ponds delayed beyond the three years afforded by 10 U.S.C. Sec. 1552(b) to question the fitness reports. Mr. Ponds filed application No. 317-85 on September 11, 1985, even though he knew or should have known of any alleged inaccuracies in his fitness reports within a reasonable period of signing them in 1980. With regard to the endorsement letter, the BCMR squarely addressed the issue. The BCMR found that the letter responded to Mr. Ponds' comments and merited inclusion in Mr. Ponds' personnel record. While Mr. Ponds may disagree with this conclusion, he has not demonstrated by "cogent and clearly convincing evidence" any error of law or egregious factual mistake by the correction board. See Dodson, 988 F.2d at 1204-05.
 
 
 29
 Substantial evidence also supports BCMR decision No. 162-89. Both Mr. Ponds' examining physician and the Coast Guard's Chief of Operational Medicine stated that Mr. Ponds' physical defect did not qualify as a disability under Coast Guard guidelines. Moreover, Mr. Ponds knew or should have known of his June 30, 1986 separation. The Coast Guard had twice notified him of this date early in 1986. Finally, courts have long held that judges "cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." Heisig, 719 F.2d at 1156.
 
 
 30
 Mr. Ponds presented no evidence to the BCMR to counter the opinion that his lower back pain was non-disqualifying. Further, Mr. Ponds pointed to no statutory provision mandating a medical board for non-disqualifying ailments. Therefore, because Mr. Ponds did not show the BCMR decision was contrary to law, arbitrary or capricious, or unsupported by substantial evidence, he is not entitled to prevail.